UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| **Stephanie Paula Farber,** | : | |
| | : | |
| Debtor. | : | |
| | : | Case No. 21-12147 (PMM) |

# O P I N I O N

## I.    INTRODUCTION

Before the Court is the Objection of the Chapter 7 Trustee, Lynn E. Feldman, to the Debtor's claim of exemptions.  The Debtor opposes the Objection.  After the submission of a stipulation of facts, briefs, and following an evidentiary hearing, the court took the matter under advisement.  For the reasons which follow, the Objection will be sustained and the exemption will be denied in its entirety.[1]

## II.    BACKGROUND

The Debtor disclosed among her assets an individual retirement account ("IRA"). See Sched. A/B, Item #21.  She claimed the IRA as exempt under Bankruptcy Code §522(d)(12) (exempting certain retirement funds from property of the estate).  See Sched. C.  In her investigation of the case, the Trustee concluded that the Debtor inherited the IRA from a parent.  Because inherited IRAs may not be exempted, the Trustee filed this Objection.  See Clark v. Rameker, 573 U.S. 122, 129, 134 S.Ct. 2242, 2242, 189 L.Ed.2nd 157 (2014) (holding that inherited IRAs are retirement funds only for the purpose of the individual that created it).  In the

---

[1] Because this matter pertains to the administration of the estate and the potential liquidation of an asset of the estate it is within this court's core jurisdiction. 28 U.S.C. §157(b)(2)(A), (O).

Objection, the Trustee specifically alleges that "the IRA was inherited . . . and set up on April 13, 2018."  Obj. ¶ 5.  The Debtor admitted this allegation.  Resp. ¶ 5.

Attempts to Create
A Stipulated Record

In lieu of a hearing on the Objection, the parties agreed to submit a stipulation of facts and briefs.  This exercise, however, proved unproductive: most of what was set forth in the stipulated facts was already known[2] and the new evidence[3] is so devoid of context that its relevance is unclear.  Nothing in the stipulation bears on what the Court was led to believe was the essential question: how may the Debtor exempt an IRA account which she inherited?

In her brief and reply brief, the Debtor—for the first time—explains *exactly* why she believes she may exempt the IRA.  Despite having previously admitted the Trustee's contention that the IRA on Schedule C is an inherited IRA, the Debtor now maintains that the account is a new IRA in her name funded with monies inherited from her father. She explains that "[t]he funds establishing the IRA…were initially inherited by the Debtor and the traditional IRA Debtor currently seeks to exempt was established…with the inherited funds." Dr. Br. 1, ¶ 5.  Her reply brief clarifies this further:

> The IRA in question is not the inherited IRA. It is a new account funded from the prior account as evidenced by the Debtor's Application to set up the new account, attached and incorporated hereby are the account documents previously provided to the Trustee.
>
> The Trustee argues that the Debtor could not have withdrawn the $44,000 from the inherited IRA and contributed the full amount to the new traditional IRA. However, the new traditional IRA was set up in 2018. *Although it appears the Debtor did withdraw the funds from the inherited IRA and contributed $44,000 to the new IRA, had the Debtor cashed same, she could have contributed $6,500 in 2018, $7,000 in 2019, and $7,000 in 2020 thereby creating an exemptible IRA in the amount of $27,500.*

---

[2] The first two (2) paragraphs state facts as to which the Court may take judicial notice and the next two are excerpts from the pleadings.
[3] The final two stipulated facts consist of something referred to as the Initial IRA application and three (3) years of IRA annual account statements for that IRA.

Dr. Reply Br. 1 (emphasis added). Accordingly, the IRA that appears on Schedule C is not the IRA which the Debtor inherited, but a new IRA opened with funds from the inherited account.

The dispute is thus not the issue initially presented: the Debtor is *not* arguing that she may exempt an inherited IRA. Her point is that the IRA on her Schedule C is a traditional IRA which she *funded* with inherited money.[4] To that, the Trustee responds that the IRA was created with funds in excess of the annual contribution limits. Tr. Reply Br. 3. That fact, she argues, disqualifies all but $6,500.00[5] of the account from tax exempt status. Id.

Due to the paucity of the record, I scheduled an evidentiary hearing to allow for the presentation of additional facts.

### III.    EVIDENTIARY HEARING

Preliminary, I note that where, as here, the record is thin, a proper allocation of the burden of proof is of the utmost importance.[6] The Bankruptcy Code presumes that a debtor's exemption claim is valid. See 11 U.S.C. §522(*l*) (property claimed as exempt is exempt in the absence of an objection by a party in interest). That places upon the objecting party the burden of proving that the exemption is not proper. Fed. R. Bankr. P. 4003(c). Where the objecting party provides proof to rebut the exemption, the debtor must offer evidence of its own to support the claim. In re Carter, 182 F.3d 1027, 1029 n. 3 (9th Cir. 1999). Ultimately, however, the objecting party bears the burden of persuasion. In re Reschick, 343 B.R. 151, 156 (Bankr. W.D. Pa. 2006). That burden may be met by a preponderance of the evidence. In re Davis, 2013 WL 85268, at *2 (Bankr.W.D.Pa., Jan. 8, 2013).

---

[4] At the trial, the Debtor's counsel confirmed this position. Tr. 9; l. 11:22.
[5] This is the 2018 contribution limit an IRA.
[6] See Heller v. Bankers Life & Cas. Co., 220 Cal. App. 2d 184, 186, 33 Cal. Rptr. 586 (Ct. App. 1963) (observing that burden of proof is crucial where there is a dearth of evidence).

The Trustee attempts to meet her initial burden of production with the Debtor's own admission. The Trustee's Objection alleges that "[t]he IRA was inherited by the debtor and was set up on April 13, 2018" and the Debtor admitted this without qualification. See Obj. ¶ 5; Resp. ¶ 5. This fact sufficiently calls into question the propriety of the exemption claim, thereby shifting the burden to the Debtor. In response, the Debtor offers proof to support her position that the IRA on her Schedule C was not inherited but was originated by her. She sought to do this with the testimony of a single witness: the insurance broker ("Leayman") who sold her an individual retirement annuity. Tr. 14. Mr. Leayman served as the go-between for the Debtor to purchase the individual retirement annuity with Allianz. Tr. 16. His involvement was limited to obtaining the information that Allianz would need from the Debtor to sell her this annuity. Tr. 16-18. He did not believe that the funds used to open the annuity were rolled over from an inherited IRA because that would not have been permitted. Tr. 20.

On cross-examination, the Trustee asked Mr. Leayman what he knew about the death of the Debtor's father and any inheritance she would have received from his estate. Tr. 28. Mr. Leayman testified that he was aware of his passing and that "assets [were to be] split." Id. And as to how she would fund the purchase of an individual retirement annuity, Mr. Leayman knew only that the Debtor had an account at Wells Fargo but he did not believe it was an inherited IRA. Id. He assumed that the Debtor already had an IRA in her name at Wells Fargo. Tr. 29. But even if she did, asked the Trustee, she would not be allowed to contribute the entire $44,000.00 inheritance into her IRA at one time. Tr. 31. The witness agreed. Id. That prompted Trustee's counsel to ask if the witness "inquired of Wells Fargo as to how this IRA ended up in the [Debtor's] name if it was inherited." Tr. 32. The witness responded:

> I did not. The wasn't something I felt at the time that I needed to do to be quite frank because it was an IRA in her name. It really wasn't until someone had reached out to me

4

> in regards to this that the confusion arose and, again, my recollection of those events was that it was an IRA in her name that moved over to us. The reason that box was checked[7] was because at that time I knew there was some type of inheritance that she received but I couldn't tell you which funds that she gave to us and, you know, what she decided she was going to end up using.

Tr. 32. Lastly, asked the Trustee, why did he indicate on his paperwork to Allianz that the source of the funds was "death benefit proceeds" if she had her own IRA? Mr. Leayman confessed that he "wasn't really understanding what was taking place at Wells Fargo with the titling of the accounts." Id.

I find Mr. Leayman's testimony to lack probative value. Nothing he said sheds light on either (1) the Trustee's premise that the Debtor improperly rolled over an inherited IRA; or (2) the Debtor's explanation that she used funds from the inherited IRA to purchase her own. The witness simply does not know where the money came from.

Notwithstanding, the Debtor rested her case. After argument as to whether she met her burden of proof, the Trustee called her expert (and sole) witness: Charles Persing, CPA. Mr. Persing opined on the legality of the Debtor's IRA for purposes of tax exemption.[8] It was his opinion that it did not qualify as tax exempt. Tr. 41. Mr. Persing reached this conclusion based on review of the 2018 Annual Summary of Tax Information of the Debtor IRA contributions. Tr. Ex.2, p.1; Tr. 45. On line 2 of the form Allianz disclosed that the Debtor made a rollover contribution in the amount of $41,447.41 for that year. Id. Under the tax code, the Debtor was permitted to rollover funds only from an account in her name. Because he was unaware of any pre-existing IRA in Debtor's name alone, Mr. Persing opined that the contribution was illegal under applicable tax law. The most that the Debtor was permitted to contribute to a new IRA in

---

[7] This is a reference to the Trustee's Exhibit 2, p.6, Product Suitability Form, Question #13, Source of the annuity's premium: Death Benefit Proceeds from life insurance/annuity.
[8] There was an objection to the witness's qualifications, but the Court found it to be meritless and therefore denied the objection.

her name would have been $6,000.00 to $7,000.00 for 2018. Id. This prompted Debtor's counsel to ask how this could have happened, especially given that the Debtor received three (3) years of annual statements from Allianz. The witness attributed the error to a mistake in paperwork. Tr. 48

After hearing the testimony of two (2) witnesses, neither of whom were parties to the subject transaction, it fell to the Court to clarify the cryptic testimony by questioning the Debtor. The Debtor testified that her father passed away in December 2017; that at the time of his death he had an account at Prudential Life Insurance; that she did not know what type of account her father had at Prudential; that her father left her an interest in that account; that after getting a medallion signature from her bank (Wells Fargo), she received a check from Prudential for $41,000.00; that she physically took the funds to Wells Fargo; and that there she used it to set up an IRA in her name. Tr. 55 – 57.

### IV. DISCUSSION

Relying on the Debtor's testimony, I find that the Debtor is not seeking to exempt an *inherited* IRA. Instead, the Debtor used her inheritance to fund the IRA in her own name at Wells Fargo. That IRA appears to have been rolled over to fund the Debtor's current IRA at Allianz. The Allianz IRA, disclosed on the Debtor's Schedule C, is the account that she seeks to exempt.

<u>Extent to Which</u>
<u>IRA is Tax-exempt</u>

That is not to say, however, that the evidence supports the Debtor's right to exempt this IRA. The evidence calls into question the tax-exempt status of the original IRA at Wells Fargo. If that account is not tax-exempt, then neither is the individual retirement annuity at Allianz. That would likewise mean that the annuity is not exempt from the bankruptcy estate: "[A debtor

6

may exempt] retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, *408*, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." 11 U.S.C. §522(d)(12) (emphasis added); see also In re Bell, 476 B.R. 168, 178 (Bankr. E.D. Pa. 2012) ("In 2005, Congress added §522(d)(12) to the Code, which permits debtors to exempt retirement benefits that 'are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986'"); see also In re Divey, 522 B.R. 780, 785 (Bankr. W.D.Pa. 2014) aff'd sub nom. Walsh v. Dively, 551 B.R. 570 (W.D. Pa. 2016), and aff'd sub nom. Walsh v. Dively, 551 B.R. 570 (W.D. Pa. 2016) (explaining that debtors in bankruptcy have the right to exempt from the reach of the bankruptcy trustee various retirement funds and pension plan assets). If the funds in the Wells Fargo account established in 2018 were not tax-exempt, a rollover of that account to Allianz could not change that status. This is the critical question when determining the exemption under §522(d)(12).

Qualified Individual Retirement Account

Again, before the Debtor opened the annuity with Allianz, she testified to having opened an individual retirement account with Wells Fargo. Among the requirements for a qualified individual retirement *account* is a limit on annual contributions to the account:

> **(a) Individual retirement account.**--For purposes of this section, the term "individual retirement account" means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements:
>
> **(1)** Except in the case of a rollover contribution described in subsection (d)(3) or in section 402(c), 403(a)(4), 403(b)(8), or 457(e)(16), no contribution will be accepted unless it is in cash, and *contributions will not be accepted* for the taxable year on behalf of any individual *in excess of the amount* in effect for such taxable year *under section 219(b)(1)(A)*.

26 U.S.C. §408(a)(1) (emphasis added). Section 219 provides, in pertinent part:

> (a) Allowance of deduction.--In the case of an individual, there shall be allowed as a deduction an amount equal to the qualified retirement contributions of the individual for the taxable year.
>
> (b) Maximum amount of deduction.--
>
> (1) In general.--The amount allowable as a deduction under subsection (a) to any individual for any taxable year shall not exceed the lesser of--
>
> (A) the deductible amount, or
>
> (B) an amount equal to the compensation includible in the individual's gross income for such taxable year.
>
> …
>
> (5) Deductible amount.--For purposes of paragraph (1)(A)--
>
> (A) In general.--The deductible amount is $5,000.
>
> (B) Catch-up contributions for individuals 50 or older.--
>
> (i) In general.--In the case of an individual who has attained the age of 50 before the close of the taxable year, the deductible amount for such taxable year shall be increased by the applicable amount.
>
> (ii) Applicable amount.--For purposes of clause (i), the applicable amount is $1,000.00.

26 U.S.C. §219(a), (b)(1), (5). For 2018, the deductible amount in subsection (b)(5) was increased to $5,500.00. See https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-ira-contribution-limits. Adding to that, the catch-up contribution of $1,000.00,[9] the Debtor's annual contribution limit to her individual retirement account was $6,500.00 for 2018. If, as the Debtor testified, she took the entire $41,000.00 which she received from her late father's account at Prudential and used all of it to open an IRA at Wells Fargo, then she contributed more than what was allowed under applicable tax law.

---

[9] The Debtor was 52 in 2018 and so qualifies for the catch-up contribution.

<u>Qualified Individual
Retirement Annuity</u>

Some months later, the Debtor purchased an individual retirement annuity from Allianz with the funds in her IRA at Wells Fargo. Among the requirements for establishing a qualified individual retirement annuity is a limit on the amount of the annual premium:

> For purposes of this section, the term "individual retirement annuity" means:
>
> an annuity contract, or an endowment contract (as determined under regulations prescribed by the Secretary), issued by an insurance company which meets the following requirements:
> …
> (2) Under the contract—
> …
> (B) the annual premium on behalf of any individual will not exceed the dollar amount in effect under section 219(b)(1)(A), and

26 U.S.C. §408(b). Like annual contributions to an individual retirement account, the amount of the annual premium payable to an individual retirement annuity is also limited by IRC §219. Thus, the deposit limit applicable to individual retirement accounts ($6,500.00) also applied to annual premium limit for individual retirement annuities. If, as the insurance broker Mr. Leayman testified, the Debtor rolled over the entire $41,000.00 from her Wells Fargo IRA into the annuity at Allianz, then she contributed more than what was allowed under applicable tax law.

The parties disagree as to what consequences flow from that conclusion. The Debtor offers two (2) arguments in her defense, both of which are based on the passage of time. First, while conceding that she opened the annuity with the entire inheritance ($41,000.00) which is well in excess of the applicable contribution limit ($6,500.00), the Debtor emphasizes that four (4) years have passed. Had she instead contributed the allowed amount for each year then she

9

would have a tax-exempt annuity in the total amount of $27,500.[10] Not coincidentally, the amount of the exemption claim on Schedule C is $27,102.57; however, that figure is arrived at not by retrojection. It is comprised of the balance in the annuity account as of the date of the petition. The Debtor's original contribution has been reduced by fairly sizable withdrawals.[11] Second, the Debtor points out that more than four (4) years have passed since this IRA was opened with the excess funds.  Any claim that the IRA is not exempt for tax or bankruptcy purposes is precluded by a statute of limitations applicable to fraudulent transfers.  Tr. 61.  Counsel offers no authority to support that position.  The Trustee responds that the Debtor engaged in what is known as a "prohibited transaction" under IRC §408, which disqualifies the account from tax exempt status.  Tr. at 64.  As a result, concludes the Trustee, the funds she had at Wells Fargo are nothing more than a cash account which she may not exempt from the bankruptcy estate.  Id.

I will take up first the Trustee's argument as to why the IRA is not tax-exempt and then turn to the Debtor's claims that any challenge to that status is time-barred or that the amount of the contribution less her withdrawals are equal to the four (4) years of allowed contributions.

Prohibited Transactions

Section 408 of the IRC provides that an IRA loses tax-exempt status where the account holder has engaged in a "prohibited transaction:"

> (e) Tax treatment of accounts and annuities.--
> …
> (2) Loss of exemption of account where employee engages in prohibited transaction.-…
>
> (A) In general.--If, during any taxable year of the individual for whose benefit any individual retirement account is established, that individual or his beneficiary engages in

---

[10] $6,500.00 for 2018 and $7,000.00/year for 2019 through 2021 for a total, tax-exempt amount of $27,500.

[11] See Trustee's Exs. 4 and 5 (reflecting that in 2020 the Debtor withdrew $4,144.74 and in 2021 another $15,144.74)

> any *transaction prohibited* by section 4975 with respect to such account, such account ceases to be an individual retirement account as of the first day of such taxable year.

26 U.S.C. §408(e)(2)(A) (emphasis added). Section 4975, in turn, defines a "prohibited transaction:"

> (c) *Prohibited transaction*.--
>
> (1) General rule.--For purposes of this section, the term "prohibited transaction" means any direct or indirect--
>
> (A) sale or exchange, or leasing, of any property between a plan and a disqualified person;
>
> (B) lending of money or other extension of credit between a plan and a disqualified person;
>
> (C) furnishing of goods, services, or facilities between a plan and a disqualified person;
>
> (D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;
>
> (E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interest or for his own account; or
>
> (F) receipt of any consideration for his own personal account by any disqualified person who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

26 U.S.C. §§4975(a), (c) (emphasis added). The purpose of § 4975 "was to bar categorically a transaction that was likely to injure [a retirement] plan." C.I.R. v. Keystone Consol. Indus., Inc., 508 U.S. 152, 160 (1993). Prohibited transactions are aimed at those who engage in self-dealing with their IRA. See, e.g. In re Willis, 2009 WL 2424548, at *9 (Bankr. S.D. Fla. 2009) aff'd sub nom. Willis v. Menotte, No. 09-82303-CIV, 2010 WL 1408343 (S.D. Fla. Apr. 6, 2010), aff'd sub nom. In re Willis, 424 F. App'x 880 (11th Cir. 2011) (finding that debtor, who withdrew $700,000.00 from his IRA to purchase real estate which he later sold for $1.2 million, engaged in a prohibited transaction notwithstanding his prompt return of the withdrawn funds).

Disqualified Person

But for one to be guilty of having engaged in a "prohibited transaction" the individual must have the status of a "disqualified person." Among the examples of who is deemed to

11

possess that status is a "fiduciary." 26 U.S.C. §4975(e)(2)(A).  The term "fiduciary" is specifically defined:

> (3) Fiduciary.--For purposes of this section, the term "fiduciary" means any person who--
>
> (A) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, …
>
> (C) has any discretionary authority or discretionary responsibility in the administration of such plan.

26 U.S.C. § 4975(e)(3)(A).  Owners of individual retirement annuities have been found to be fiduciaries for purposes of determining whether they are disqualified persons who engaged in prohibited transaction under this IRC section.  See In re Albracht, 505 B.R. 347, 353 (Bankr.N.D.Ga. 2013) (finding that debtor who purchased individual retirement annuity was fiduciary because he had discretion over the investment strategy of the annuity and because he had the right to withdraw proceeds from the annuity subject to taxes and penalties); see also John B. Atkins, Individual Retirement Accounts and Prohibited Transactions, 25 June ABA Prob. & Prop. 34 (May/June 2011) ("IRAs generally are separated into three categories: (1) managed or trusteed accounts, (2) self-directed or custodial accounts, and (3) directed trustee accounts. For a managed IRA account, the trustee exercises management and discretion over IRA assets such that the trustee is considered to be the fiduciary. When the IRA is a self-directed, custodial account, the IRA owner is managing the IRA, although a custodian would be named to hold the IRA assets. In this case, the IRA owner is the fiduciary.").  While the annuity contract in this case was not made part of the record, the evidence presented demonstrates that the Debtor was the owner of this annuity (see Tr. Ex. 3, p. 23) and that she was entitled to make withdrawals from it.  Id., p. 26.  On that basis, it would appear that the Debtor was a "fiduciary" as understood by §4975(e).

Yet while there is enough evidence to find that the Debtor is a fiduciary, there is nothing to show that she engaged in a prohibited transaction. The Trustee has not alleged that the Debtor engaged in inappropriate conduct. The Debtor is alleged to have contributed too much money into her own account. That is not a prohibited transaction as defined by §4975(c).

<u>Tax Consequences of</u>
<u>Excess Contributions</u>

A contribution in excess of allowable annual limits, however, does give rise to other adverse consequences. Section 4973 of the IRC provides:

> (a) Tax imposed.--In the case of--
> …
> **(3)** an individual retirement annuity (within the meaning of section 408(b)),
> …
> there is imposed for each taxable year a tax in an amount equal to 6 percent of the amount of the *excess contributions* to such individual's accounts or annuities (determined as of the close of the taxable year).

26 U.S.C. § 4973(a)(3) (emphasis added)

> The term excess contribution is defined as:
>
> (b) Excess contributions.--For purposes of this section, in the case of individual retirement accounts or individual retirement annuities, the term "excess contributions" means the sum of--
>
> **(1)** the excess (if any) of--
>
> **(A)** the amount contributed for the taxable year to the accounts or for the annuities (other than a contribution to a Roth IRA or a rollover contribution described in section 402(c), 403(a)(4), 403(b)(8), 408(d)(3), or 457(e)(16)), over
>
> **(B)** the amount allowable as a deduction under section 219 for such contributions …

26 U.S.C. §4973(b). For present purposes, the calculation of the Debtor's excess contribution requires simple subtraction: the Court must take the amount contributed for that tax year ($41,000.00) and subtract from it the amount that the taxpayer was permitted to contribute

13

($6,500.00).[12] The difference is the amount of the "excess contribution." That balance is assessed a 6% tax.

Reporting Requirement
For Excess Contributions

And that is not the only consequence which arises. Taxpayers are required to file a Form 5329 for each year they have excess contributions to their IRAs. See Paschall v. C.I.R., 137 T.C. 8, 20 (2011). The form is a tax return as required by §6011(a) (stating general rule that "[w]hen required by regulations prescribed by the Secretary any person made liable for any tax imposed by this title, or with respect to the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary.") Id. at 21.

Additional Taxes
and Penalties

In addition, failure to report excess contributions can result in additional taxes. See 26 U.S.C. §6651(a)(1) (imposing a 5 percent addition to tax for each month or portion thereof a required return is filed after the prescribed due date); see also Paschall v. C.I.R., supra, 137 T.C. at 21; Ohsman v. C.I.R., 101 T.C.M. (CCH) 1471, at *3 (T.C. 2011). Penalties are another charge which may be assessed for failing to report. See 26 U.S.C. §6651(a)(2) (imposing a penalty for failure to pay timely the amount of tax shown on a return.);[13] Wegbreit v. Comm'r of Internal Revenue, 118 T.C.M. (CCH) 3, 22 (T.C. 2019), aff'd, 21 F.4th 959 (7th Cir. 2021) So while the Debtor's excess contribution to her IRA may not constitute a "prohibited transaction," it does give rise to other duties and tax liabilities.

---

[12] Subparagraph (b)(2) adds to that any excess contribution from the preceding year less (1) distributions out of the account made that year and the following year; and (2) plus the amount that applicable contribution limit for that year exceeded the amount actually contributed. This additional calculation is not relevant here because the Debtor made only the initial contribution to the account when she opened it and nothing since then. There is then no possibility of excess contributions from preceding years which might accumulate.
[13] The penalty for failure to pay is 0.5% of the unpaid taxes for each month or part of the month the tax remains unpaid not to exceed 25% of the unpaid taxes.

Statute of Limitations
and Tax Exempt Status

It is as to those charges—and not the excess contribution to her IRA—that the Debtor's claim of staleness might apply. See 26 U.S.C. §6501 (the IRS is allowed three (3) years to assess unpaid taxes and unfiled forms, but also providing that where a taxpayer fails to file a return, the tax may be assessed "at any time."). But because the Debtor has not filed the form which apprises the IRS that she has made excess contributions to her IRA annuity, the time for the Service to assess the applicable tax has not yet begun to run. See Paschall v. Comm'r, supra, 137 T.C. at 17 (holding that the filing of the Forms 1040 did not start the statute of limitations running for purposes of the §4973 excise tax in the absence of accompanying Forms 5329). In any event, Debtor's counsel did not clarify which legal action he considers to be time-barred.

Annuity Balance and
Allowable Contributions

Neither does counsel offer a legal basis for the second defense of the Debtor's conduct; to wit, that the current balance of the annuity ($27,102.57) is roughly equal to what the total of four (4) years of allowable annual premiums would have been, $27,500.00 ($6,500.00 for 2018 plus $21,000.00 ($7,000.00 per year for 2019-2021)). Dr.'s Reply Br. 1. The implication of this assertion is that through indirect means, the Debtor has created a tax-exempt annuity in the allowable amount.

This facile argument is based largely on coincidence: if the current annuity balance is roughly equivalent to the sum of four (4) years of permitted contributions, then it is because the Debtor withdrew substantial sums from the account. And while the Debtor may have disclosed on her 2020 tax return IRA distributions of $15,000.00 (see Dr. Ex. 1), that neither excuses nor explains why she contributed almost $35,000.00 more to the tax-deferred annuity than what was

15

allowed under applicable tax law. As explained above, the excess contribution gave rise to a reporting responsibility as well as assessment of tax liability. Because her counsel did not question the Debtor as to why she contributed all of the money she had at Wells Fargo into the Allianz annuity, the Court cannot tell if this was due to reasonable cause and not due to willful neglect.  The taxpayer who relies in good faith reliance on professional advice may demonstrate a basis for a reasonable cause defense.  Repetto v. C.I.R., 2012 WL 2160440, at *15 (U.S.Tax Ct.) citing Freytag v. C.I.R., 89 T.C. 849, 888, 1987 WL 45307 (1987).  It behooves the taxpayer to seek independent and competent advice and to avoid reliance on those parties with a financial interest in the transaction.  Paschall, 137 T.C. at 22.  This record contains nothing that might shed light on the Debtor's state of mind when determining how to handle the inherited money.

The Annuity is Neither Tax-
Nor Bankruptcy-Exempt

What is clear is that the excess contribution gave rise to tax liability and precluded the tax-exempt status of the account beyond the $6,500.00 limit. Neither the rollover of the annuity nor the passage of time affected this status. By definition then, the Debtor's current IRA is not tax exempt.  As a result, the Bankruptcy Code exemption for retirements funds is unavailable to the Debtor.  See In re Cherwenka, 508 B.R. 228, 241 (Bankr.N.D.Ga. 2014) (holding that annuity disqualified from tax exempt status where Debtor's 2003 contributions in the amount of $250,000.00 and $100,000.00 greatly exceed the statutorily prescribed limit of $3,000.00); In re Ludwig, 345 B.R. 310, 317 (Bankr.D.Colo.2006) (disallowing debtor's claimed annuity exemption because, in part, the annuity exceeded the annual contribution limit); and In re Rogers, 222 B.R. 348, 350 (Bankr.S.D.Cal.1998) (holding that lump sum premium payment for debtor's annuity contract "far exceeded" former $2,000.00 limit).  I recognize that the original Wells Fargo account would have qualified for the tax-exempt status to the extent of $6,500.00

when it was opened. However, the Debtor has since taken withdrawals from the account which exceed this amount. Therefore, I will not afford the account any tax-exempt status as of the date of filing.

## V. CONCLUSION

Because the Debtor has not adequately rebutted the evidence provided by the Trustee to support the assertion that the exemption of the Debtor's IRA is improper, I will sustain the Objection. The Debtor's exemption under 11 U.S.C. §522(d)(12) is disallowed in its entirety. An appropriate Order follows.

**Date:**  April 26, 2022

*Patricia M. Mayer*
_____
**PATRICIA M. MAYER
U.S. BANKRUPTCY JUDGE**